# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DURRELL ANTHONY PUCKETT,<br><br>          Plaintiff,<br><br>     vs.<br><br>T. LEWIS, et al.,<br><br>          Defendants. | 1:11cv01565 LJO DLB PC<br><br>ORDER GRANTING DEFENDANTS'<br>MOTION TO STRIKE SUR-REPLY<br>(Document 49)<br><br>FINDINGS AND RECOMMENDATION<br>REGARDING DEFENDANTS' MOTION<br>FOR SUMMARY JUDGMENT<br><br>(Document 41)<br><br>THIRTY-DAY OBJECTION DEADLINE |

Plaintiff Durrell Anthony Puckett ("Plaintiff"), a state prisoner proceeding pro se, filed this civil rights action in the Kings County Superior Court on June 14, 2011. Defendants removed the action to this Court on September 13, 2011, and paid the filing fee. Pursuant to the Court's May 15, 2012, order, this action is proceeding on the following claims alleged in Plaintiff's First Amended Complaint: (1) Retaliation by Defendant Keener in violation of the First Amendment; (2) Denial of access to the courts by Defendant Keener in violation of the First Amendment; (3) Use of excessive force by Defendants Keener, Manquero, Johnson, Gonzalez, and Guajardo in violation of the Eighth Amendment; (4) Deliberate indifference to serious

1

medical needs by Defendant Lewis in violation of the Eighth Amendment; and (5) Intentional infliction of emotional distress by Defendant Keener.[1]

On February 25, 2013, Defendants filed this motion for summary judgment.[2] Also on February 25, 2013, Defendants filed an ex parte application to modify the discovery and scheduling order. The Court denied the request on February 27, 2013.

On March 11, 2013, Plaintiff filed his opposition. Defendants filed their reply on March 18, 2012.

## I.     MOTION TO STRIKE SURREPLY

After Defendants filed their reply pointing out the deficiencies in Plaintiff's opposition, Plaintiff filed an "opposition" to the reply. On April 5, 2013, Defendants filed a motion to strike the filing, which the Court construes as a surreply. Plaintiff did not oppose this motion.

The Local Rules of this Court and the Federal Rules of Civil Procedure do not generally permit the filing of a surreply. See L.R. 230(l) (matter is generally submitted after movant files and serves reply). The Court did not request a surreply from Plaintiff. Moreover, the requirements of an opposition to a motion for summary judgment were provided to Plaintiff, in detail, in Defendants' February 25, 2013, notice.

Accordingly, Defendants' motion to strike, filed April 5, 2013, is GRANTED and Plaintiff's surreply (Document 48) is STRICKEN.

## II.    LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party

---

[1] The order also dismissed Defendant Eckmann from this action.

[2] In Defendants' February 25, 2013, notice, filed concurrently with their motion for summary judgment, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. Klingele v. Eikenberry, 849 F.2d 409, 411-412 (9th Cir. 1988).

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586, n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2002); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

for the nonmoving party, Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted).

**III.   STATEMENT OF UNDISPUTED FACTS**

In opposition to the Motion for Summary Judgment, Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by Defendants as undisputed. Local Rule 260(b). Despite receiving a notice of the requirements for opposing summary judgment, Plaintiff did not address Defendants' factual assertions relating to the events at issue. Plaintiff attached exhibits to his opposition, including a Rules Violation Report containing inmate statements, an affidavit from Inmate Maurice Robinson and documents related

to his appeal. Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by admissible evidence offered by Plaintiff.[3]

Plaintiff is incarcerated at California State Prison, Corcoran, where the events at issue occurred. He is housed in the Security Housing Unit ("SHU") and is also in the Enhanced Outpatient Program, which is a program for inmates who have a demonstrated inability to program due to serious mental disorder. Keener Decl. ¶¶ 6-7.

*August 24, 2010-Defendants' Facts*

On August 24, 2010, at approximately 9:15 a.m., Officer Rupp escorted Licensed Psychiatric Technician ("LPT") Garcia to Plaintiff's single cell so that Garcia could give Plaintiff his medication. Plaintiff had covered the window to his cell and Officer Rupp asked Plaintiff if wanted his medications. Plaintiff stated that he did not want them and that he was suicidal. Rupp Decl. ¶ 4. Rupp informed LPT Garcia that Plaintiff was suicidal, and she summoned Defendant LPT Lewis to assist Plaintiff. Rupp. Decl. ¶ 5; Lewis Decl. ¶ 4.

Defendant Lewis immediately went to Plaintiff's cell and saw that the window was covered. She attempted to make contact by calling his name, but Plaintiff was non-responsive. Defendant Lewis then advised Defendant Sergeant Johnson of the situation. Lewis Decl. ¶ 5. In response, Defendant Johnson directed Defendant Correctional Officers Manquero and Gonzalez to Plaintiff's cell to get him to submit to handcuffs and exit the cell for a clinical evaluation. Johnson Decl. ¶ 5.

When Defendants Manquero and Gonzalez arrived at the cell, the window was covered. They attempted to speak to Plaintiff, but he did not respond. Gonzalez Decl. ¶ 4; Manquero Decl. ¶ 4. Defendants Manquero and Gonzalez reported back to Defendant Johnson that Plaintiff

---

[3] Although Plaintiff's First Amended Complaint is verified and could be used to support his opposition, Plaintiff did not cite to it in his opposition and therefore the Court will not consider it. The parties bear the burden of supporting their motion and opposition with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record they wish the Court to consider. Fed. R. Civ. P. 56(c); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010); Carmen, 237 F.3d at 1031.

did not respond to their calls, and that he had covered his cell and they could not see inside. Johnson Decl. ¶ 6. At approximately 9:25 a.m., Defendant Johnson instructed Defendant Correctional Officer Guajardo to report to Plaintiff's cell. When he arrived, he saw that the window was covered and he could not see inside. Guajardo Decl. ¶ 4. Defendant Johnson then instructed Defendant Manquero to check the rear window, but it was also covered. Manquero Decl. ¶ 5. When he returned to the front of the cell, he told Defendant Johnson and Defendant Guajardo gave him a tactical shied. Manquero Decl. ¶ 6.

Defendant Johnson then banged on Plaintiff's cell door numerous times and yelled into the cell, but Plaintiff did not respond. Johnson Decl. ¶¶ 7-8; Manquero Decl. ¶ 8; Guajardo Decl. ¶ 5. Because Plaintiff said he was suicidal and because he had several prior suicidal ideations, Defendant Johnson became concerned for Plaintiff's safety. Johnson Decl. ¶ 9. Defendant Johnson assembled an emergency medical entry team to stand by in the event that Plaintiff had harmed himself and instructed Defendant Guajardo to prepare tactical shields. Johnson Decl. ¶¶ 10-11. He also ordered Defendant Gonzalez to have leg restraints ready. Johnson Decl. ¶ 12.

Defendant Johnson then instructed Defendant Correctional Officer H. Gonzalez, Defendant Manquero and Defendant Guajardo to assemble outside of Plaintiff's cell for an emergency cell extraction. H. Gonzalez Decl. ¶ 5. Defendant Johnson briefed the officers on how they were going to open the food port in order to attempt to gain a visual of Plaintiff. Guajardo Decl. ¶ 7. Defendant Johnson opened the food port and used a flashlight to look into the cell. He saw Plaintiff against the wall, to the immediate right side of the cell in between the cell door and the toilet/sink. Johnson Decl. ¶ 14; Manquero Decl. ¶ 8; Guajardo Decl. ¶ 6. Defendant Johnson called out to Plaintiff, but he did not respond. Defendant Johnson observed that Plaintiff's arms were at his sides and a blue, state issued sheet appeared to be hanging from the ceiling along the left side of his body. Defendant Johnson could not see Plaintiff's feet and

determined that it was possible that Plaintiff had hanged himself.  Johnson Decl. ¶ 16; Manquero Decl. ¶ 8.

Defendant Johnson determined that the cell needed to be opened because this was an urgent situation.  He instructed the Control Booth Officer to open Plaintiff's cell door.  Johnson Decl. ¶ 17; Manquero Decl. ¶ 9; Guajardo Decl. ¶ 10; Gonzalez Decl. ¶ 8; F. Gonzalez Decl. ¶ 5. Defendants Manquero and Guajardo positioned themselves in front of the cell door with emergency extraction shields, while Defendants Johnson and Gonzalez stood behind them. Guajardo Decl. ¶ 10; Gonzalez Decl. ¶ 6; F. Gonzalez Decl. ¶ 7.  As the cell door opened, Plaintiff threw a liquid substance at the officers and lunged at the tactical shield, striking Defendant Guajardo's shied.  Defendant Johnson hit Plaintiff with one short burst of pepper spray in the facial area.  Johnson Decl. ¶ 18; Manquero Decl. ¶ 9; Guajardo Decl. ¶ 11; Gonzalez Decl. ¶¶ 8-9; F. Gonzalez Decl. ¶¶ 7-8.

Plaintiff then exited his cell to his left and was driven to the ground by Defendant Guajardo, who used his tactical shield to push Plaintiff down.  Johnson Decl. ¶ 19; Manquero Decl. ¶ 10; Guajardo Decl. ¶ 12; Gonzalez Decl. ¶ 9.  Three other officers and Defendant Johnson held Plaintiff down on the ground.  Johnson Decl. ¶ 19.  Defendant Guajardo ordered Plaintiff to submit to handcuffs and he was able to secure Plaintiff's right arm while Defendant Manquero cuffed his left arm.  Johnson Decl. ¶ 21; Guajardo Decl. ¶¶ 12-13; Manquero Decl. ¶ 10.  Defendant Gonzalez applied leg restraints.  Gonzalez Decl. ¶¶ 9-10.  Defendant Guajardo attempted to assist Defendant Gonzalez in securing Plaintiff in a spit mask by placing his right arm underneath Plaintiff's chin.  At that point, Plaintiff lowered his chin and bit Defendant Guajardo's arm.  Guajardo Decl. ¶ 14.

Once Plaintiff was secured in handcuffs, Defendant Johnson ordered the officers to bring him to his feet.  However, Plaintiff continued to resist and attempted to assault staff again. Johnson Decl. ¶ 21.  Plaintiff refused to stand up on his own, so Defendants Guajardo and

Manquero picked him up and carried him to a holding cell.  Johnson Decl. ¶ 23; Manquero Decl. ¶ 11; Guajardo Decl. ¶ 15; Gonzalez Decl. ¶ 11.

Approximately one minute later, Defendant Johnson asked Plaintiff if he would be compliant with staff if he were removed from the holding cell and taken to decontaminate.  He said, "hell yes, my fucking eyes are burning."  Johnson Decl. ¶ 24.  At Defendant Johnson's instruction, Defendants Guajardo and Manquero escorted Plaintiff to the shower.  On the way to the shower, he tried to kick the escorting officers and was taken to the ground to prevent further injury to staff.  Defendant Guajardo ordered Plaintiff to stop resisting and they again escorted him to the shower.  After the shower, he was returned to the holding cell.  Shortly thereafter, Plaintiff requested to be decontaminated again and was again taken to the shower.  Johnson Decl. ¶¶ 25- 27; Manquero Decl. ¶¶ 11-13; Guajardo Decl. ¶¶ 16-18; Gonzalez Decl. ¶¶ 11-14.

Defendants do not know why Plaintiff pretended to commit suicide, and then attacked them when they entered his cell to save him.  Defendants acted to protect Plaintiff, to prevent him from further assaulting staff, to restore order and to gain his compliance with their orders.  Johnson Decl. ¶ 29; Manquero Decl. ¶ 14; Guajardo Decl. ¶ 21; Gonzalez Decl. ¶ 15.

At approximately 9:45 a.m., Defendant Lewis performed a visual medical examination of Plaintiff following the emergency cell extraction, which she did not witness.  Lewis' examination revealed that Plaintiff had no visible injuries.  Plaintiff did not inform her that he was injured and did not request further medical care.  Johnson Decl. ¶ 28; Lewis Decl.¶¶ 6-7.  Plaintiff was ordered to the emergency room at John D. Klarich Memorial Hospital for psychiatric evaluation.  Johnson Decl. ¶ 28.

Defendant Keener never ordered staff to assault Plaintiff on August 24, 2010.  The incident was an emergency cell extraction ordered by Defendant Johnson, and Defendant Keener did not participate in the decision to perform the cell extraction or in the actual extraction. Keener Decl. ¶ 16.

*August 24, 2010- Plaintiff's Facts*

Inmate Robinson did not witness the incident at issue, but declares that certain Defendants admitted to using force against Plaintiff. Mr. Robinson states that on or about August 24, 2010, Defendants Keener and Johnson told him that they were "going to run in my cell like they did 'Puckett' in [sic] kill" him if he continued to cause trouble by attempting to file complaints against them. Defendants Keener and Johnson continued to brag about assaulting Plaintiff "and kept mentioning how they had him screaming for help." Later that week, Defendant Guajardo "willingly had admitted to choking 'Puckett' until 'Puckett' bit him off." Pl.'s Opp. Ex. B.

*Plaintiff's Legal Property*

In August 2010, Plaintiff was involved in numerous incidents, all of which were caused by his behavior. Keener Decl. ¶ 8. During this time, Plaintiff was issued Rules Violation Reports for delaying a peace officer, refusing a cellmate, indecent exposure with masturbation, disobeying a peace officer and attacking officers. Keener Decl. ¶¶ 9-14.

Defendant Keener has never destroyed Plaintiff's legal property, nor has he ordered the destruction of any of Plaintiff's property. Keener Decl. ¶ 15. Similarly, Defendant Guajardo did not, and has never, destroyed any property belonging to Plaintiff, nor did Defendant Keener ever order him to do so. Guajardo Decl. ¶ 22.

During his deposition, Plaintiff testified that he filed a habeas petition in federal court that was denied in November 2010 "for lack of grounds or incident evidence or something." Pl.'s Dep. 21:4-24. Prior to that, Plaintiff filed a habeas petition in state court, which was also denied. Pl.'s Dep. 21:7-16. At the time of his deposition, Plaintiff's timely habeas petition was pending in the Ninth Circuit. Pl.'s Dep. 22:9-236.

## IV. DISCUSSION

### A. Excessive Force

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

As to Defendants Manquero, Johnson, Gonzalez and Guajardo, Plaintiff alleges that on August 24, 2010, "one of them" knocked him down, punched him, choked him and kicked him. He further alleges that Defendant Johnson sprayed him in the face with pepper spray while he was in handcuffs. He alleges that Defendant Keener directed the attack.

Defendants contend that their uncontroverted evidence demonstrates that they responded to an emergency situation in which they believed that Plaintiff's safety was at risk, only to be attacked by Plaintiff. They argue that under these facts, the force used was necessary, minimal and defensive.

In opposition, however, Plaintiff submits the declaration of inmate Maurice Robinson.[4] Inmate Robinson did not witness the incident at issue, but declares that certain Defendants admitted to using force against Plaintiff. Mr. Robinson states that on or about August 24, 2010, Defendants Keener and Johnson told him that they were "going to run in my cell like they did 'Puckett' in [sic] kill" him." Mr. Robinson states that Defendants Keener and Johnson continued to brag about assaulting Plaintiff "and kept mentioning how they had him screaming for help." Later that week, Defendant Guajardo "willingly had admitted to choking 'Puckett' until 'Puckett' bit him off." Pl.'s Opp. Ex. B. Mr. Robinson's declaration is sufficient to create a genuine issue of material fact.

In their reply, Defendants simply contend that Mr. Robinson's declaration is "suspect" because it is contradicted by the other evidence. Defs.' Reply 3. They also explain that Plaintiff has submitted one declaration, versus Defendants' offering of the declarations of seven sworn peace officers and one medical professional. Based on this, they declare that a "severe imbalance of evidence" is now before the Court and requires entry of summary judgment.

---

[4] Plaintiff also attaches (1) a Rules Violation hearing report that includes various statements from other inmates about the events of August 24, 2010; (2) his appeal form concerning another incident; (3) a Rules Violation Report relating to the August 24, 2010, incident and containing Plaintiff's version of events; and (4) the Director's Level Appeal decision. These documents are inadmissible, however, to prove the truth of the statements contained therein. Fed.R.Evid. 801(c)(1),(2); Fed.R.Evid. 802.

11

As the Court has repeatedly explained, the "weight" of the evidence is not the standard on summary judgment. Plaintiff has offered admissible evidence, however slight, that creates a genuine dispute of material fact. So long as there is a genuine issue of material fact, regardless of where the weight of the evidence lies, summary judgment must be denied. It is not for this Court to resolve factual disputes. Moreover, "'Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom ... summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.'" Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (quoting Santos v. Gates, 287 F.3d 836, 853 (9th Cir.2002)).

Accordingly, the Court finds that Defendants Keener, Manquero, Johnson, Gonzalez and Guajardo are not entitled to summary judgment on the Eighth Amendment excessive force claim.

B.     Deliberate Indifference to Serious Medical Need

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v.

Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096) (internal quotation marks omitted).

Here, Plaintiff alleges that Defendant Lewis falsified a report by stating that Plaintiff had no injuries after the August 24, 2010, incident. He further alleges that Defendant Lewis did not provide any medical treatment.

According to Defendants' uncontroverted evidence, Defendant Lewis performed a visual medical examination of Plaintiff that revealed no visible injuries. Plaintiff did not inform her that he was injured and did not request further medical care.

Plaintiff has not provided any evidence regarding this claim in his opposition and he therefore fails to demonstrate a genuine issue of material fact.[5]  Accordingly, Defendant Lewis is entitled to summary judgment on this claim.

C.      Access to Courts

Plaintiff has a constitutional right of access to the courts and prison officials may not actively interfere with his right to litigate.  Silva v. Di Vittorio, 658 F.3d 1090, 1101-02 (9th Cir. 2011).  This means that the state is prohibited from "erect[ing] barriers that impede the right of access of incarcerated persons."  Id. at 1102 (citations omitted).  However, to state a viable claim for relief, Plaintiff must allege he suffered an actual injury, which is actual prejudice with respect to contemplated or existing litigation.  Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing Lewis v. Casey, 518 U.S. 343, 348, 116 S.Ct. 2174 (1996)) (quotation marks omitted), cert. denied, 132 S.Ct. 1823 (2012).

Plaintiff alleges that Defendant Keener prevented access to his criminal appeal documents, causing him to "lose my life sentence case." Compl. 4.  He has failed, however, to put forth any evidence to dispute Defendant's facts.

In his declaration, Defendant Keener states that he did not direct Defendant Guajardo to destroy Plaintiff's legal property.  Keener Decl. ¶ 15.  Defendant Keener further declares that he has not destroyed, or ordered the destruction of, any of Plaintiff's property, personal or legal. Keener Decl. ¶ 15.

More importantly, Plaintiff has failed to dispute Defendant's evidence showing that Plaintiff was able to file habeas petitions.  According to his deposition testimony, Plaintiff filed a habeas petition in state court, as well as a petition in federal court.  His federal petition was denied "for lack of grounds or incident evidence or something." Pl.'s Dep. 21:4-24.  He also

---

[5] Although the Court indicated that it would not consider Plaintiff's verified complaint, the Court notes that Plaintiff states that he had "blood, bruises [and] cuts" when he was examined by Defendant Lewis. Compl. 4. Even considering this claim, his allegation is insufficient to demonstrate deliberate indifference to a serious medical need.

14

filed a timely petition in the Ninth Circuit, which was pending at the time of his deposition. Pl.'s Dep. 23:1-2.

Therefore, regardless of Plaintiff's allegations of property destruction, he has failed to dispute Defendant's evidence showing that he suffered no actual injury. Without actual injury, Plaintiff's claim fails.

Plaintiff has failed to demonstrate a genuine issue of material fact, and Defendant Keener is entitled to summary judgment on this claim.

### D.  Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

*Destruction of Legal Property*

Plaintiff alleges that in response to Plaintiff's lawsuits, Defendant Keener retaliated against him by ordering Defendant Guajardo to destroy his legal property. Defendant's undisputed evidence, however, shows that Defendant Keener did not order the destruction of his legal property. Keener Decl. ¶¶15. Defendant Guajardo also states that he has never destroyed Plaintiff's legal property, nor has Defendant Keener ever instructed him to do so. Guajardo Decl. ¶ 22.

Moreover, Plaintiff fails to present any evidence, whether direct or circumstantial, that his lawsuits were the substantial motivating factors in Defendant's alleged destruction of legal property. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff has failed to demonstrate a genuine issue of material fact, and Defendant Keener is entitled to summary judgment on the retaliation claim related to destruction of Plaintiff's legal property.

*August 24, 2010, Attack*

Plaintiff also alleges that Defendant Keener ordered the August 24, 2010, attack. Plaintiff's evidence on this claim creates a genuine issue of material fact. Although Defendant states that he did not order such an attack, and that the cell extraction was a result of Plaintiff's purported suicide attempt, Plaintiff has submitted evidence to dispute this.

In the declaration of Inmate Robinson, he states that Defendants Keener and Johnson threatened to treat him as they did Plaintiff "if [he] continue[s] to cause trouble in keep attempting to file any complaints on them." Pl.'s Opp. Ex. B. However slight, Mr. Robinson's declaration is sufficient to create a genuine issue of material fact. Accordingly, Defendant Keener is not entitled to summary judgment on the issue of retaliation related to the August 24, 2010, attack.

E.      Intentional Infliction of Emotional Distress

Under California law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Corales v. Bennett, 567 F.3d 554, 571 (9th Cir. 2009) (quotation marks omitted); Tekkle v. United States, 567 F.3d 554, 855 (9th Cir. 2007); Simo v. Union of Needletrades, Industrial & Textile Employees, 322 F.3d 602, 621-22 (9th Cir. 2003).

Conduct is outrageous if it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. Corales, 567 F.3d at 571; Tekkle, 511 F.3d at 855; Simo, 322 F.3d at 622.

Such a claim, however, is subject to the requirements of the California Tort Claims Act, which requires the timely presentation of a written claim as a condition precedent to filing suit. Cal. Gov.Code §§ 945, et seq. Thus, the claim may not be pursued in a civil action absent an allegation of compliance. Karim–Panahi v. L.A. Police Dep't, 839 F.2d 621, 627 (9th Cir.1988).

Plaintiff has not alleged compliance with the California Tort Claims Act and his claim is therefore barred. Defendant Keener is entitled to summary judgment on this claim.

F.      Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, one inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

The other inquiry is whether the right was clearly established. Saucier, 533 U.S. at 201. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). In resolving these issues, the court must

view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The Court finds that Defendants are not entitled to qualified immunity on the Eighth Amendment excessive force claim or the First Amendment retaliation claim. Taken in the light most favorable to Plaintiff, the facts indicate a violation of Plaintiff's rights under the First and Eighth Amendment, as stated above. Such rights were clearly established at the time of the incident. See, e.g., Whitley v. Albers, 475 U.S. 312, 320-21 (1986).

## V.   CONCLUSION AND RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion for summary judgment, filed on February 25, 2013, be GRANTED IN PART and DENIED IN PART. Specifically, the Court recommends that summary judgment be GRANTED on (1) the denial of access to the courts claim against Defendant Keener; (2) the Eighth Amendment deliberate indifference to a serious medical need against Defendant Lewis; (3) the retaliation claim against Defendant Keener based on the destruction of legal property; and (4) the intentional infliction of emotional distress claim against Defendant Keener.

The Court recommends that summary judgment be DENIED on (1) the Eighth Amendment excessive force claim against Defendants Keener, Manquero, Johnson, Gonzalez and Guajardo; and (2) the retaliation claim against Defendant Keener based on his ordering of the August 24, 2010, attack.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate

Judge's Findings and Recommendations." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 6, 2013**                              /s/ Dennis L. Beck
                                                  UNITED STATES MAGISTRATE JUDGE